1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FLIGHTCAR, INC.,

               Plaintiff,

     vs.

CITY OF MILLBRAE, and DOE 1 through
DOE 50,

               Defendants.

Case No:  C 13-5802 SBA

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS**

Dkt. 4

       Plaintiff FlightCar, Inc. ("FlightCar" or "Plaintiff"), filed the instant action against

the City of Millbrae ("the City" or "Defendant") to challenge its revocation of FlightCar's

Conditional Use Permit ("CUP").  The parties are presently before the Court on

Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. Proc.

12(b)(6).  Having read and considered the papers filed in connection with this matter and

being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART

Defendant's motion to dismiss for the reasons set forth below.  The Court, in its discretion,

finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b);

N.D. Cal. Civ. L.R. 7-1(b).

# I.   BACKGROUND

## A.   FACTUAL SUMMARY[1]

FlightCar is a startup car sharing company which allows vehicle owners to park their cars for free at a FlightCar lot, usually located close to an airport, provided that FlightCar can, in turn, rent out the vehicle while the owner is away.  Compl. ¶ 4, Dkt. 1.  The company began operating in February 2013 in Burlingame, California.  Id. ¶ 5.  In need of more space, FlightCar later moved to a vacant lot located at 480 El Camino Real in Millbrae, California ("the Property").  Id. ¶ 5.  FlightCar sought a business license from the City in order to conduct business at the new location.  Id. ¶ 6.  The City advised FlightCar that in order to obtain a business license, the company must first obtain a CUP from the Millbrae Planning Department.  Id.

FlightCart applied for a CUP in March 2013.  Id. ¶ 7.  On April 15, 2013, the Planning Department unanimously approved a three-year CUP, subject to the completion of certain alterations of the Property.  Id. ¶ 7.  Following a public hearing, the Planning Commission unanimously approved a modified CUP on June 3, 2013.  Id. ¶¶ 8-9.  In reliance on the CUP approval, FlightCar then entered into a one-year lease for the Property, hired staff members and made more than $10,000 in tenant improvements.  Id. ¶ 10.  Such improvements included changes necessary to comply with the CUP.  Id.

In July 2013, FlightCar submitted plans to the Building Department to construct a temporary structure on the Property, as specified in the CUP.  Id. ¶ 11.  The Building Department rejected the plans, and instead required FlightCar to build a permanent structure.  Id.  FlightCar complied, and submitted plans for a permanent structure.  Id.  The plans were accepted by the Building Department, but were rejected by the Planning Commission, which stated that the structure must be temporary.  Id.  After several weeks of effort by FlightCar, the Building and Planning Departments finally agreed to allow FlightCar to build a temporary structure.  Id.

---

[1] The following facts are taken from the Complaint, which, for purposes of this motion, the Court accepts as true.

In August 2013, FlightCar commenced operations and applied for a business license. Id. ¶ 13. The application indicated that approvals from the Planning and Building Departments were necessary before the application could be approved. Id. On September 17, 2013, representatives from the City's Building and Planning Departments visited the Property to ascertain FlightCar's compliance with the CUP. Id. The inspectors noted about a dozen items requiring correction. Id. ¶¶ 14-15. In response, FlightCar sent the Planning Department a timeline for completing the work to address the City's concerns. Id. ¶¶ 14-15. However, on October 11, 2013, about a week before FlightCar was scheduled to complete the corrections, the Planning Commission notified FlightCar that it was holding a hearing on October 21, 2013, to consider revoking the CUP. Id. ¶ 16. As a result, FlightCar accelerated its efforts to complete the corrections. Id. The hearing did not proceed on the scheduled date. Id.

On October 24, 2013, a City inspector (identified as "Ms. Harris") visited the Property. Id. ¶ 17. She informed FlightCar that all of the items previously identified by City had been addressed to her satisfaction, except for a small bush that needed to be replaced. Id. FlightCar subsequently replaced the bush, as directed. Id. Ms. Harris then advised FlightCar that it was fully compliant with the CUP. Id. ¶ 18. Shortly thereafter, FlightCar representatives went to a City office to obtain a business license. Id. The representatives were informed that although FlightCar had made all of the necessary corrections, a license could not be issued because the Planning Commission had scheduled a hearing to revoke the CUP for November 4, 2013. Id. FlightCar alleges that it received notice of that hearing on October 28, 2013, three days less than the ten days' notice required by the Millbrae Municipal Code. Id. ¶ 19.

The Planning Commission hearing on the proposed revocation of FlightCar's CUP took place as scheduled on November 4, 2013. Id. ¶ 20. Kevin Petrovich, one of FlightCar's founders, was present at the hearing and presented argument to the Commission. Def.'s Request for Jud. Notice ("RJN") Ex. C, Dkt. 5-4. At the conclusion of the hearing, the Commission voted to recommend the revocation of the CUP. Id. at 32.

Specifically, the Commission's recommendation was based on reasons relating to: "(1) landscape maintenance, (2) maintenance conditions of the property, (3) zoning code requirements, (4) Building permit requirements, (5) [inadequate] number of employees on the premises, (6) employee parking, (7) curb painting, (8) taxes[,] and [(9)] [lack of] business license approval." Id. ¶ 20.

According to FlightCar, it had ten days to appeal the Planning Commission's recommendation. Compl. ¶ 23. Despite this, on November 12, 2013, two days before FlightCar's deadline to appeal, the City Council convened to consider the revocation of the CUP. Id. ¶ 24. A non-lawyer representative appeared at the hearing on behalf of FlightCar. RJN Ex. D. Though conceding that FlightCar was compliant with CUP, the City Council voted in favor of revocation. Compl. ¶ 25. The City Council was advised by an attorney from the San Mateo County Counsel's Office that notwithstanding the revocation of the CUP, FlightCar could be shut down only upon the commencement of an abatement proceeding. Id. ¶ 26. Under the Municipal Code, the initiation of an abatement proceeding would afford FlightCar an opportunity to cure any non-compliance issues. Id. ¶ 26. The City, however, has not commenced an abatement proceeding against FlightCar. Id. ¶ 29.

On November 13, 2013, a Sheriff's Deputy from the County of San Mateo visited the Property. Id. ¶ 27. The Deputy issued a Notice to Appear for a "violation of two City of Millbrae Municipal Code sections" to FlightCar employee Andrei Parenco. Id. ¶ 27. The two citations were for "violation of the City of Millbrae Municipal Code § 7.05.020 operating without a business license and § 10.05.2520 zoning non-compliance." Id. ¶ 27. After the citations were issued, the employee was told that he would go to "jail" if FlightCar did not cease operations. Id. ¶ 27. The Sheriff's Deputy returned again on November 14, 2013 and issued another unspecified citation. Id. ¶ 28. Since November 12, 2013, the Sheriff's Deputy has returned to the property "every day at least once a day ... making statements that the business should be shut down." Id. ¶ 29. In total, the San Mateo County Sherriff's office issued four citations "for failure to have a business license 7.05.020 and one citation for non-compliance with zoning 10.05.25.20." Id. ¶ 29.

1

2

### B.   PROCEDURAL HISTORY

On November 18, 2013, FlightCar filed a "Verified Petition for Writ of Mandate (CCP §§ 1085, 1094.5); Complaint for Damages, Declaratory Relief and Injunctive Relief" ("Complaint") in San Mateo Superior Court.  The Complaint alleges the following claims against the City:  (1) writ of mandate pursuant to Cal. Civ. Code § 1085 ("§ 1085"); (2) writ of mandate pursuant to Cal. Civ. Code § 1094.5 ("§ 1094.5"); (3) violation of 42 U.S.C. § 1983 ("§ 1983") (for violation of the Due Process Clause, the Takings Clause and the Equal Protection Clause); (4) inverse condemnation; (5) declaratory relief; and (6) injunctive relief.

On December 16, 2013, the City removed the action to this Court under 28 U.S.C. § 1441(b), based on FlightCar's claim under 42 U.S.C. § 1983.  The City now brings a Rule 12(b)(6) motion to dismiss the first claim for ordinary mandamus under § 1085, the third claim for violation of § 1983 and the fourth claim for inverse condemnation.  In support of its motion, the City has submitted a Request for Judicial Notice, which contains, inter alia, transcriptions of the Planning Commission and City Council hearings.  The motion is fully briefed and ripe for adjudication.[2]

## II.   <u>LEGAL STANDARD</u>

Rule 12(b)(6) "tests the legal sufficiency of a claim."  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed under Rule 12(b)(6) for failure to state a cognizable legal theory or insufficient facts to support a cognizable legal theory. <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take

_____

[2] FlightCar's opposition exceeds the page limits specified in the Court's Standing Orders.  Although the City's motion also is oversized, it was filed before the action was reassigned from a Magistrate Judge.  In any event, both parties are reminded to comport with all procedural requirements applicable to any motions and requests filed in this Court, including the requirement to meet and confer in good faith prior to seeking the Court's intervention.

judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).

## III.  DISCUSSION

### A.  42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights, but a jurisdictional vehicle for vindicating federal rights elsewhere conferred. See Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2008).

In this case, Plaintiff's § 1983 claim is predicated on three underlying constitutional violations:  (1) deprivation of property in violation of due process; (2) violation of the Takings Clause; and (3) denial of equal protection. Compl. ¶ 55.

#### 1.  Due Process

The Due Process Clause of the Fourteenth Amendment may give rise to claims under § 1983 for violation of (1) substantive due process and (2) procedural due process. Zinermon v. Burch, 494 U.S. 113, 125 (1990). "[T]he Due Process Clause contains a substantive component that bars certain *arbitrary, wrongful government actions* 'regardless of the fairness of the procedures used to implement them.'" Id. (emphasis added). Such a claim arises from "a government deprivation of life, liberty, or property." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). In addition, a "§ 1983 action may be brought for a violation of procedural due process" where the government deprives the plaintiff "of a constitutionally protected interest in 'life, liberty, or property . . . *without due*

*process of law*.'"  Id. (emphasis in original, citation omitted).  Notice and a meaningful opportunity to be heard are "the hallmarks of procedural due process."  Ludwig v. Astrue, 681 F.3d 1047, 1053 (9th Cir. 2012) (internal quotations and citation omitted).

Although there is no dispute that the Complaint alleges a violation of procedural due process, the parties disagree whether a claim for substantive due process also is at issue.  The pleadings allege a "denial of due process," see Compl. ¶ 52, but do not expressly state whether the right violated is procedural or substantive.  In its opposition, FlightCar states that it is proceeding on both due process theories.  Opp'n at 10.  While the City seems to suggest that it was unaware that substantive due process also is at issue, Reply at 5 n.2, the Court finds that the pleadings provide fair notice that FlightCar is alleging claims based on procedural and substantive due process.  In particular, the pleadings allege that the City arbitrarily and unjustifiably revoked the CUP.  Compl. ¶¶ 17, 18, 25, 39.  These allegations challenge *the substance of the City's actions* and therefore are pertinent to a claim for denial of substantive due process.  See Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007) (recognizing an arbitrary deprivation of a landowner's right to devote his land to a legitimate use may give rise to a substantive due process claim).  In contrast, FlightCar's allegations that the City scheduled the Planning Commission and subsequent City Council hearings with less notice than required by the Millbrae Municipal Code, see Compl. ¶¶ 19, 23, are pertinent to claim for denial of procedural due process.  See Ludwg, 681 F.3d at 1053.

In its reply, the City proffers a one-sentence argument that FlightCar cannot pursue a substantive due process claim because the conduct at issue is subsumed by its claim under the Takings Clause.  Reply at 2.  Because this argument was not presented in the City's moving papers or adequately briefed, it is not properly before the Court.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("[a] district court need not consider arguments raised for the first time in a reply brief.");  Indep. Towers of Wash., 350 F.3d at 929.  That aside, the City's argument appears to be misplaced.  The Fifth Amendment does not preempt all due-process challenges to a land use regulation: a land use action that causes an arbitrary and

1   irrational deprivation of real property, but does not cause a taking, might be "so arbitrary or

2   irrational that it runs afoul of the Due Process Clause."  Lingle v. Chevron U.S.A., Inc., 544

3   U.S. 528, 542 (2005); accord Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008).

4          Having concluded that the Complaint, in fact, presents claims for violation of

5   substantive and procedural due process, the Court now turns to the specific arguments

6   presented in the City's motion to dismiss.  In particular, the City argues that FlightCar has

7   failed to demonstrate that it possesses a protectable property interest, and has otherwise

8   failed to demonstrate a denial of procedural due process.  These contentions are discussed

9   below.

10                          a)      Property Interest

11         To succeed on a procedural or substantive due process claim, the plaintiff "must first

12  demonstrate that he was deprived of a constitutionally protected property interest."  Gerhart

13  v. Lake Cnty., Montana, 637 F.3d 1013, 1019 (9th Cir. 2011).  A government benefit, such

14  as a license or permit, may give rise to a protectable property interest where the recipient

15  has a "legitimate claim of entitlement to it."  Id.  The entitlement generally must be one

16  created by state law.  Id.; see Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895,

17  903 (9th Cir. 2007) ("Vested rights in a land development permit . . . 'are created and their

18  dimensions are defined by existing rules or understandings that stem from . . . state law.'")

19  (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).

20         The City does not dispute that a CUP can give rise to a property interest, but argues

21  that such interest "did not vest" because, under the Millbrae Municipal Code, the City

22  remained free to revoke the permit based on FlightCar's alleged failure to comply with its

23  terms.  Mot. at 8.  This argument lacks merit.  "Once a licensee has acquired a conditional

24  use permit, or has 'deemed approved' status, a municipality's power to revoke the

25  conditional use is limited. . . .  If the permittee has incurred substantial expense and acted in

26  reliance on the permit, the permittee has acquired a vested property right in the permit and

27  is entitled to the protections of due process before the permit may be revoked."  Korean

28  Am. Legal Advocacy Found. v. City of Los Angeles, 23 Cal. App. 4th 376, 393 n.5 (1994);

see Kerley Indus., Inc. v. Pima Cnty., 785 F.2d 1444, 1446 (9th Cir. 1986) ("Having granted appellant a permit to operate its plant, the county could not take it away arbitrarily, . . . for improper reasons, or without appropriate procedural safeguards.") (internal citation omitted).

Here, the Complaint expressly alleges that in reliance on the City's issuance of the CUP, FlightCar entered into a one-year lease to secure the Property, expended over $10,000 in tenant improvements on its new location, and has paid and continues to pay employees to run its business there. Compl. ¶ 10. Such allegations, taken as true and construed in favor of FlightCar, are sufficient to state a plausible claim that FlightCar acquired a vested property right in the CUP. See Malibu Mountains Recreation, Inc. v. Cnty. of Los Angeles, 67 Cal. App. 4th 359, 368 (1998) ("[T]he grant of a CUP with subsequent reliance by the permittee creates a fundamental vested right . . . ."); Trans-Oceanic Oil Corp. v. City of Santa Barbara, 85 Cal. App. 2d 776, 784 (1984) ("When, in reliance [on the issuance of a permit], work upon the Building is actually commenced and liabilities are incurred for work and material, the owner acquires a vested property right to the protection of which he is entitled.") (internal quotations and citations omitted).[3]

The City counters that FlightCar's reliance was not in "good faith" because FlightCar allegedly knew it was in violation of the CUP. Reply at 1-2. The flaw in this argument is that FlightCar has alleged the opposite; to wit, that it is fully compliant with the CUP and was informed as such by the City. E.g., Compl. ¶¶ 18, 25. On a Rule 12(b)(6) motion, those allegations must be accepted as true. Moreover, neither of the cases cited by the City suggests, let alone holds, that a permittee's non-compliance with a permit necessarily vitiates a showing of good faith reliance on a permit. See Avco Comty. Developers, Inc. v. S. Coast Reg'l Comm'n, 17 Cal.3d 785, 793 (1976) (plaintiff could not

---

[3] The City claims that FlightCar cannot predicate its showing of reliance on obtaining a one-year lease because doing so was a prerequisite for approval of the CUP. Reply at 3 n.1. Because the City provides no supporting citation to the record, the Court disregards this assertion. See Indep. Towers of Wash., 350 F.3d at 929 (court need not consider arguments unsupported by citations to the record); Civ. L.R. 7-5(a).

show reliance based on expenses incurred *before* the Building permit was issued); <u>Trans-Oceanic Oil Corp.</u>, 85 Cal. App. 2d at 783-84 (noting that a permit cannot be arbitrarily revoked by a municipality "where, on the faith of it, the owner has incurred material expense.") (citation omitted).  Accordingly, the Court declines to dismiss FlightCar's substantive and procedural due process claims for failure to allege the requisite property interest.

### b) *Procedural Due Process*

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)).  As such, before depriving a party of a property interest, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Robinson v. Hanrahan</u>, 409 U.S. 38, 39-40 (1972) (citations omitted).  The amount of notice due depends on the context. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").  "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" <u>Memphis Light, Gas & Water Division v. Craft</u>, 436 U.S. 1, 15 (1998).

FlightCar alleges that it was denied adequate notice of both the Planning Commission hearing at which the Commission recommended revoking the CUP *and* the subsequent City Council hearing where the Council accepted that recommendation.  "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 904 (9th Cir. 1993).  For the reasons discussed above, FlightCar satisfies the first and second elements of a procedural due process claim based on the revocation of the CUP.  As such,

the Court focuses its analysis on the third element, which requires FlightCar to establish that it was denied constitutionally adequate process in the revocation of its CUP.

### i.   *Planning Commission Hearing*

The Millbrae Municipal Code provides that the City Council may revoke a CUP for non-compliance.  Millbrae Mun. Code § 10.05.2520(I)(1).  The first step in the revocation process is a hearing before the Planning Commission.  Id. § 10.05.2520(I)(2) ("Before the city council considers revocation of any conditional use permit, the planning commission shall hold a duly noticed public hearing thereon after giving written notice thereof to the permittee at least ten days in advance of such hearing . . . .").  Within five days of that hearing, "the planning commission shall transmit a report of its findings and its recommendations on the revocation to the city council."  Id.  The City Council must hold a public hearing on the proposed "revocation of an approved conditional use permit," with "[n]otice of the public hearing . . . given in the time and manner provided in Article XXIX."  Id. § 10.05.2520(F).  Article XXIX requires at least ten days' notice of the public hearing.  Id. § 10.05.2900.

The Complaint alleges that the City violated FlightCar's due process rights by providing it with only seven instead of ten days' notice of the Planning Commission hearing.  However, a federal due process claim cannot be grounded on the violation of a procedural right created by *state law*.  See Samson v. City of Bainbridge Island, 683 F.3d 1051, 1060 (9th Cir. 2012) (noting that it is the Due Process Clause itself, *not state law*, which determines what process is due).  Thus, the fact that FlightCar received less notice than required by the Municipal Code, standing alone, fails to demonstrate a due process violation.  Jenks v. Hull, 67 F.3d 307 (9th Cir. 1995) ("mere violations of state law do not constitute a violation of due process and do not provide the basis for a § 1983 claim.");  Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994) (noting that "if state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures *yet still provide sufficient process to survive constitutional scrutiny*.") (internal quotations and citation omitted, emphasis added), overruled on other grounds, Sandin v. Conner, 515

1  U.S. 472, 483-84 (1995)); <u>Wallace v. Tilley</u>, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial

2  of state procedures in and of itself does not create inadequate process under the federal

3  constitution.  A violation of state law . . . is not a denial of due process, even if the state law

4  confers a procedural right.") (internal quotations and citation omitted).

5       The salient question for purposes of procedural due process is whether the party-in-

6  interest had a meaningful opportunity to adequately prepare for the upcoming hearing.  <u>See</u>

7  <u>Memphis Light, Gas & Water Div.</u>, 436 U.S. at 15.  In this case, FlightCar acknowledges

8  that it received actual notice of Planning Commission hearing, and the record shows that it

9  appeared at the hearing to present arguments to challenge the City's proposal to revoke the

10  CUP.  Compl. ¶¶ 19, 24; RJN Exs. C, D.  Notably, FlightCar does not allege that the

11  shortened notice in any way impeded its ability to prepare for or undermined its

12  presentation at the Planning Commission hearing.  The absence of prejudice is fatal to a due

13  process claim.  <u>See</u> <u>Al Haramain Islamic Found., Inc. v. U.S. Dept. of Treasury</u>, 686 F.3d

14  965, 990 (9th Cir. 2012) (holding that a procedural due process claim was properly

15  dismissed where the lack of proper notice was harmless); <u>Power Road-Williams Field LLC</u>

16  <u>v. Gilbert</u>, -- F. Supp. 2d --, 2014 WL 1515141, *6 (D. Ariz. Apr. 18, 2014) (finding that

17  the public entity defendants' failure to comply with procedural requirements of state law

18  did not violate landowner's right to procedural due process where "it was provided notice

19  of Defendants' proposed action and that it was able to appear at multiple public hearings

20  and present evidence").

21       In view of the foregoing, FlightCar's § 1983 claim for denial of procedural due

22  process, insofar as it is premised on notice of the Planning Commission hearing, is

23  DISMISSED with leave to amend.

24              ***ii.***   ***City Council Hearing***

25       FlightCar's allegations regarding lack of sufficient notice of the City Council

26  hearing also fails to state a claim.  According to FlightCar, it had ten days under Municipal

27

28

Code § 10.05.2710[4] to appeal the Planning Commission's recommendation; however, the City Council met to consider the revocation of the CUP "two days prior to the expiration of the statutory period allow for appeal . . . ."  Compl. ¶¶ 23-24.  This assertion is misplaced.  Section 10.05.2710 applies to appeals from "final actions" of the Planning Commission.  Here, there was no need for FlightCar to appeal because there was no final decision by the Planning Commission.  Rather, in accordance with § 10.05.2520(I)(2), the Planning Commission convened a public hearing for the purpose of preparing a *recommendation* to the City Council on the revocation.  As such, the fact the City Council scheduled a hearing on the CUP revocation before FlightCar's time to appeal expired is inapposite because there was no final decision from which to appeal in the first instance.[5]

Setting aside its reliance on the wrong municipal code section, it does appear that the City failed to provide ten days' notice of the City Council hearing on whether to accept the Planning Commission's recommendation to revoke the CUP.  See Millbrae Mun. Code §§ 10.05.2520(f), 10.05.2900.  That being said, the instant claim suffers from the same flaws as FlightCar's claim based on inadequate notice of the Planning Commission hearing.  Nowhere in its Complaint does FlightCar alleges that it was deprived of adequate notice of the City Council hearing, deprived of an opportunity to prepare for the hearing, or denied the opportunity to appear at the hearing to challenge the Planning Commission's recommendation.  To the contrary, the record shows that a representative from FlightCar appeared at the hearing and responded to the City's arguments for revoking the CUP.  RJN Ex. D.

---

[4] Section 10.05.2710, entitled "Appeal of Planning Commission action," states as follows:  "Any final action of the planning commission taken at any public hearing on any design review permit, conditional use permit, exception, variance, or other matter for which the commission has final approval authority may be appealed to the city council by any person, provided such appeal is submitted within ten days of the planning commission action.  (Ord. 726, § 2 (Att. A))."

[5] In its opposition, FlightCar tacitly acknowledges that the Planning Commission did not issue a final ruling from which an appeal may be taken by correctly citing § 10.05.2520(F).  Opp'n at 11 n.5.  FlightCar shall rectify its erroneous recitation and citation to the Municipal Code, consistent with the findings of this Order.

1    In its opposition, FlightCar claims for the first time that it learned of the City

2   Council hearing from a news reporter only a few days prior thereto.  Opp'n at 12.  As a

3   result, FlightCar contends that it lacked sufficient time to retain legal counsel and was thus

4   forced to appear at the City Council hearing through a non-lawyer spokesperson.  Id.

5   While such facts certainly bear upon whether the City's actions deprived FlightCar of a

6   meaningful opportunity to prepare for and be heard at the hearing, the Court cannot

7   consider them at this juncture because they are not alleged in the pleadings.  See Schneider

8   v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir.1998) ("'new' allegations

9   contained in the [plaintiff]'s opposition . . . are irrelevant for Rule 12(b)(6) purposes.").

10   Accordingly, FlightCar's § 1983 claim for denial of procedural due process, insofar

11   as it is premised on notice of the City Council hearing, is DISMISSED with leave to

12   amend.

13                **2.     Takings Clause**

14   The Fifth Amendment's Takings Clause prohibits the taking of private property for

15   public use without just compensation.  U.S. Const. amend. V; see Gammoh v. City of La

16   Habra, 395 F.3d 1114, 1122, amended in part on other grounds, 402 F.3d 875 (9th Cir.

17   2005).  There are "physical takings and regulatory takings."  Tahoe-Sierra Preservation

18   Council, 535 U.S. at 321.  In the latter type of taking, which is relevant here, the Fifth

19   Amendment is violated if the government regulation "does not substantially advance

20   legitimate state interests *or denies an owner economically viable use of his land*."  Lucas v.

21   S.C. Coastal Council, 505 U.S. 1003, 1016 (1992) (quoting Agins v. Tiburon, 447 U.S.

22   255, 260 (1980)).

23   The City first contends that FlightCar's takings claim fails on the grounds that it has

24   failed to demonstrate a protectable property interest in the CUP or allege that the taking

25   was for "public use."  Mot. at 7-9.  These contentions are unavailing.  As set forth above in

26   the Court's analysis of FlightCar's due process claim, FlightCar has sufficiently alleged a

27   protectable property interest.  With regard to its second contention, neither of the cases

28   cited in the City's brief holds that a plaintiff alleging a *regulatory* takings claim must

1   explicitly allege that the taking was for public use.  Mot. at 13 (citing <u>Penn Cent. Transp.</u>

2   <u>Co. v. City of New York</u>, 438 U.S. 104, 123 (1978) and <u>Berman v. Parker</u>, 348 U.S. 26, 31-

3   33 (1954)).  In fact, the Supreme Court has held that "neither a physical appropriation *nor a*

4   *public use* has ever been a necessary component of a 'regulatory taking.'"  <u>Tahoe-Sierra</u>

5   <u>Preservation Council</u>, 535 U.S. at 326 (emphasis added).  In view of the above, the Court

6   declines to dismiss FlightCar's § 1983 claim for violation of the Takings Clause.

7                         **3.      Equal Protection**

8           "The Equal Protection Clause . . . is essentially a direction that all persons similarly

9   situated should be treated alike."  <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S.

10  432, 439 (1985).  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal

11  Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants

12  acted with an intent or purpose to discriminate against the plaintiff based upon membership

13  in a protected class."  <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998).  The first

14  step in analyzing an equal protection claim is to identify the group to which the plaintiff

15  claims to be a member.  <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (2005).  "The

16  groups must be comprised of similarly situated persons so that the factor motivating the

17  alleged discrimination can be identified."  <u>Id.</u>

18          The allegations in support of FlightCar's equal protection claim are entirely

19  conclusory.  Compl. ¶¶ 51-57.  In particular, the pleadings fail to identify the particular

20  group to which FlightCar claims membership, and otherwise is devoid of any facts showing

21  that the City acted with the intent or purpose of discriminating against FlightCar based on

22  its membership in such group.  In its opposition, FlightCar points to allegations in the

23  Complaint that the City did not follow its notice procedures or abatement ordinance and

24  refused to issue a business license despite its compliance with the CUP.  Opp'n at 13.  Such

25  allegations, FlightCar maintains, show that it was "treated differently from others similarly

26  situated because the City did not follow procedures that are supposed to be applicable to all

27  persons."  <u>Id.</u>  However, for purposes of stating an equal protection claim, it is not enough

28  to conflate "all persons not injured into a preferred class receiving better treatment than the

1    plaintiff." <u>Thornton</u>, 425 F.3d at 1167 (internal quotations and citation omitted).[6]   In view

2    of the paucity of facts alleged, FlightCar's equal protection claim is DISMISSED with

3    leave to amend.

4         **B.    ORDINARY MANDAMUS UNDER CIVIL CODE § 1085**

5         "The proper method of obtaining judicial review of most public agency decisions is

6    by instituting a proceeding for a writ of mandate."   <u>Bunnett v. Regents of Univ. of Cal.</u>,

7    35 Cal. App. 4th 843, 848 (1995).  There are two types of mandamus:  ordinary (or

8    traditional) and administrative.  <u>See</u> Cal. Civ. Proc. Code §§ 1085, 1094.5.  The applicable

9    type of mandate depends on the nature of the administrative action or decision to be

10   reviewed.  <u>Tielsch v. City of Anaheim</u>, 160 Cal. App. 3d 570, 574 (1984).

11        "A traditional or ordinary writ of mandate under [§ 1085] is a method for compelling

12   a public entity to perform a legal and usually ministerial duty."   <u>City of Scotts Valley v.</u>

13   <u>Cnty. of Santa Cruz,</u> 201 Cal. App. 4th 1, 23 (2011) (internal quotations omitted).  "A

14   'ministerial duty' is one generally imposed upon a person in public office who, by virtue of

15   that position, is obligated 'to perform in a prescribed manner required by law when a given

16   state of facts exists.'"   <u>Flores v. Cal. Dep't of Corr. and Rehab.</u>, 224 Cal. App. 4th 199, 205

17   (2014) (citations omitted).  "Thus, ordinary mandate is used to review adjudicatory actions

18   or decisions when the agency was not required to hold an evidentiary hearing."   <u>Bunnett</u>,

19   35 Cal. App. 4th at 848.  In contrast, administrative mandamus under § 1094.5 is used to

20   review quasi-adjudicatory acts "in which by law a hearing is required to be given, evidence

21   is required to be taken and discretion in the determination of facts is vested in [an] inferior

22   tribunal, corporation, board or officer . . . ."  Cal. Civ. Code § 1094.5(a).

23        FlightCar brings claims for a traditional writ under § 1085 to challenge the City's

24   refusal to issue a business license and its revocation of the CUP, <u>see</u> Compl. ¶¶ 32-46, and

25   _____

26        [6] The Court notes that "[a] successful equal protection claim may be brought by a
     'class of one,' when the plaintiff alleges that it has been intentionally treated differently
     from others similarly situated and that there is no rational basis for the difference in

27   treatment."  <u>SeaRiver Mar. Fin. Holdings, Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir.
     2002).  Even so, there are no allegations that any other person or entity similarly situated to

28   FlightCar received different treatment.

1   for an administrative writ under § 1094.5 also to challenge the revocation of the CUP, see

2   id. ¶¶ 47-50.  The City's motion to dismiss only challenges the claim for a traditional writ.

3                **1.    Business License**

4           FlightCar first seeks an ordinary writ to compel the City to issue a business license.

5   "There are essentially two prerequisites to issuance of a writ of mandate under Code of

6   Civil Procedure section 1085: '(1) the respondent has a clear, present, and usually

7   ministerial duty to act, and (2) the petitioner has a clear, present, and beneficial right to

8   performance of that duty.'"  Eel River Disposal and Resource Recovery, Inc. v. Humboldt,

9   221 Cal.App.4th 209, 239 (2013) (citations omitted).  The question of whether a duty is

10  ministerial is a question of statutory interpretation to be decided by the court.  Cnty. of Los

11  Angeles v. City of Los Angeles, 214 Cal. App. 4th 643, 653 (2013).  Here, the parties

12  disagree whether FlightCar's challenge to the City's refusal to issue a business license is

13  cognizable in an ordinary writ proceeding.  For the reasons discussed below, the Court

14  concludes that it is not.

15          Chapter 7.05 of the Municipal Code, which governs the City's issuance of business

16  licenses, provides initially that "[a]ny person starting a new business in the city shall file a

17  written application prior to commencing business and paying the appropriate tax."

18  Millbrae Mun. Code § 7.05.170.  The application requires a completed Business License

19  Approval Form to document the approvals from various City Departments, which "must be

20  completed and submitted with the Business License Application."  RJN Ex. A.  If the tax

21  collector rejects or otherwise declines to issue a business license, the applicant may appeal

22  the decision to the city manager within fifteen days of the adverse decision.  Millbrae Mun.

23  Code §§ 7.05.370(A), 7.05.380(A).  Upon the timely filing of a notice of appeal, the city

24  manager, upon ten days' notice, conducts a hearing which culminates in the issuance

25  findings and a determination.  Id. ¶ 7.05.380(A).  "The decision of the city manager shall be

26  final and is reviewable *only* by petition to the Superior Court pursuant to Code of Civil

27  Procedure Section *1094.5*."  Id. § 7.05.380(B) (emphasis added).

28

The City contends that FlightCar cannot establish a beneficial right to a business license because it failed to obtain the necessary approvals from the Planning and Building Departments. Mot. at 15. Perhaps so, but the City overlooks a more glaring, fundamental flaw in FlightCar's claim. Under California law, exhaustion of administrative remedies is a jurisdictional prerequisite to seeking mandamus relief. Leff v. City of Monterey Park, 218 Cal. App. 3d 674, 680 (1990) ("Because the rule is jurisdictional, the doctrine is not open to judicial discretion."). To fully exhaust its claim based on its business license application, FlightCar was required to have filed an appeal with the city manager. Millbrae Mun. Code §§ 7.05.370(A), 7.05.380(A). FlightCar does not allege that it took such an appeal. Absent an appeal, there is no final decision subject to mandamus review. See City of Fillmore v. State Bd. of Equalization, 194 Cal. App. 4th 716, 726 (2011) ("A court may review only a decision by the final administrative decisionmaker" and "cannot interfere in the intermediate stages of the proceeding"). In any event, even if FlightCar had timely appealed the tax collector's decision and the city manager denied the appeal, FlightCar's remedy lies in an administrative writ under § 1094.5, not an ordinary writ under § 1085. Id. § 7.05.380(B).

In sum, the Court finds that FlightCar has failed to state a claim for ordinary mandamus to challenge the City's refusal to issue a business license. Therefore, FlightCar's first claim for relief, to the extent that is it challenges the City's refusal to issue a business license, is DISMISSED without prejudice.[7]

### 2.    CUP

The City next argues that its decision to revoke FlightCar's CUP involves a quasi-judicial act, as opposed to ministerial duty, and therefore, FlightCar cannot rely on traditional mandamus under § 1085 to challenge the revocation. Mot. at 16-18. As a general matter, a public entity's decisions relating to CUPs are discretionary in nature and thus properly reviewed under § 1094.5. See City of Monterey v. Carrnshimba, 215 Cal.

---

[7] If FlightCar, in fact, appealed the denial of its business license application, it may amend its second claim under § 1094.5 to include such a claim.

App. 4th 1068, 1089 (2013) (citing <u>Qualified Patients Ass'n v. City of Anaheim</u>, 187 Cal. App. 4th 734 (2010).  However, "[w]here a petition challenges an agency's failure to perform an act required by law *rather than the conduct or result of an administrative hearing*, the remedy is by ordinary mandate pursuant to Code of Civil Procedure section 1085, not by administrative mandate pursuant to section 1094.5." <u>Conlan v. Bonta</u>, 102 Cal. App. 4th 745, 752 (2002) (emphasis added).

FlightCar argues that its claim for ordinary mandamus is limited to challenging the City's failure to comply with the notice and timing requirements applicable to the Planning Commission and City Council hearings, as specified in the Millbrae Municipal Code. Opp'n at 15-16.  This assertion is contradicted by the allegations of the Complaint, which clearly allege that FlightCar is seeking ordinary mandamus relief with respect to *both* the City's decision to revoke the CUP *and* its failure to provide the requisite notice.  Compl. ¶¶ 39, 40.  Since FlightCar's challenge to the revocation of the CUP is cognizable only through administrative mandamus under § 1094.5, such claim is DISMISSED from FlightCar's first claim for relief under § 1085, without leave to amend.

In contrast, the Court finds that FlightCar's remaining claim based on the City's failure to provide sufficient notice of the Planning Commission and City Council hearings are cognizable in a claim for traditional mandamus because it does not challenge *how* the hearings were conducted or the result of those hearings.  <u>Conlan</u>, 102 Cal. App. 4th at 752; <u>see also</u> <u>Pozar v. Dept. of Transp.</u>, 145 Cal. App. 3d 269, 271 (1983) (traditional mandamus may be used to compel a public agency to follow its own rules or procedures when it has a ministerial duty to do so).[8]

---

[8] Alternatively, the City contends that "even if FlightCar challenged the ministerial act of not having enough notice, it is irrelevant because it appeared at the hearing."  Reply at 9.  The City cites no legal authority to support this argument.  In addition, the City did not make this argument in its moving papers.

**C.    INVERSE CONDEMNATION**

FlightCar's claim for inverse condemnation is predicated on the City's denial of its "vested property rights, including its Conditional Use Permit[.]"  Compl. ¶ 59.  This claim is based on article I, section 19, of the California Constitution, which states in relevant part: "Private property may be taken or damaged for public use only when just compensation . . . has first been paid to, or into court for, the owner."  The City moves to dismiss FlightCar's inverse condemnation claim on the grounds FlightCar has neither shown a protectable property interest nor made any allegation of "public use."  Mot. at 19-20.

The City has failed to present compelling arguments for dismissing FlightCar's claim for inverse condemnation.  As set forth above, the Court has found that FlightCar has adequately alleged a vested property interest in the CUP.  With respect to the City's latter contention, FlightCar need not specifically allege "public use," where, as here, the inverse condemnation claim is akin to a regulatory taking.  See Smith v. City and Cnty. of San Francisco, 225 Cal. App. 3d 38, 45 (1990) ("To state a cause of action for inverse condemnation based on government regulation amounting to a constitutional taking, appellants must allege facts showing such regulation deprived them of substantially all use of their property."); see also Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1428 (9th Cir. 1996) (stating that where the inverse condemnation claim is premised on the denial or revocation of a land use permit, the plaintiff need only allege that "the City's actions (1) did not substantially advance a legitimate public purpose; or (2) denied it economically viable use of its property.").  In view of the above, the Court declines to dismiss FlightCar's claim inverse condemnation.

**IV.    CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.    Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART, as set forth above.

1    2.    Plaintiff shall have twenty-one (21) days from the date this Order is filed to

2   file an amended complaint, consistent with the Court's rulings.  Plaintiff is advised that any

3   additional factual allegations set forth in it amended complaint must be made in good faith

4   and consistent with Federal Rule of Civil Procedure 11.  To avoid unnecessary motion

5   practice, the parties shall meet and confer in good faith regarding the sufficiency of

6   Plaintiff's amended allegations in their forthcoming First Amended Complaint.

7        IT IS SO ORDERED.

8   Dated:  June 13, 2014

9                                               SAUNDRA BROWN ARMSTRONG
                                                United States District Judge